TANQUERAY, GORDON & CO., Limited, v. GORDON DISTILLING & DISTRIBUTING CO.

(District Court, D. New Jersey. May 2, 1914.)

TRADE-MARKS AND TRADE-NAMES (§ 70*) — UNLAWFUL COMPETITION — GIN PACKAGE.

Complainant and its predecessors, since 1769, had put out a gin .manufactured in England, under the trade-name "Gordon & Co.'s Dry Gin," in oblong bottles bearing a boar's head, with the words "Gordon's Dry Gin," with "London" and "England" blown in the glass, respectively, above and below the first-mentioned words. Defendant,· a New 'Jersey corporation, in 1909, put out a compound containing gin in similar bottles, bearing labels and displaying a trade-mark consisting of the head of an elderly man in a white circle. Blown in the glass of defendant's bottle were the words "Gordon's Dry Gin," and above them in the glass, but in small letters, were the letters "U. S. A. Father." The words "Gordon's Dry Gin" on defendant's bottles were of the same size and style as the· words printed in red, "Gordon & Co.'s Dry Gin," on complainant's bottles, and on each of the two front corners was a representation of juniper berries, from which gin is manufactured. *Held*, that defendant was guilty of unlawful competition, in endeavoring to palm off its goods for complainant's product, and that complainant was entitled to an injunction permanently restraining defendant's use of the word "Gordon" or "Gordon's," except so as to clearly indicate that the contents of the bottle were not manufactured by complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

In Equity. Bill by Tanqueray, Gordon & Co., Limited, against the Gordon Distilling & Distributing Company. Decree for complainant.

Geo. W. Tucker, Jr., of New York City, for complainant.
George J. Stillman, of Jersey City, N. J., for defendant.

BRADFORD, District Judge. The bill in this case has been.brought by Tanqueray, Gordon & Co., Limited, a corporation of Great Britain and Ireland, against the Gordon Distilling & Distributing Company, a corporation of New Jersey, alleging the violation of trade-marks

and labels, and unfair competition in trade, and praying for an injunction and an accounting of profits and damages. The complainant was incorporated in 1898 and manufactures and sells gin known as "Gordon Gin." It is alleged in the bill as follows:

"That heretofore and about the year 1769 one Alexander Gordon began the business of gin distilling under the firm name of 'Gordon & Co.,' in London, England, and put upon the market a certain gin under the name and trade-mark 'Gordon & Co.'s Dry Gin.' The business thus established by him was thereafter carried on by himself until his death when he was succeeded by his son, Charles Gordon, who in turn was succeeded by his son Charles Gordon, Jr., and a Mr. Knight; later Mr. Knight retired, and Mr. Charles Gordon, Jr., after carrying on the business as sole owner duly assigned all his right, title and interest therein including the name of 'Gordon & Co.' to J. P. Currie, E. H. Currie, E. Farquhar and R. C. W. Currie, and the said E. H. Currie, E. Farquhar and J. P. Currie duly assigned, transferred and set over all their right, title and interest in and to the said business and firm name 'Gordon & Co.' to the said R. C. W. Currie. That thereafter and about the year 1898 the said R. C. W. Currie who was then continuing the business and trading under the firm name of 'Gordon & Co.' together with Charles W. Tanqueray, William Tanqueray, Jr., and George Dimoke Green, who were then trading under the firm name of Charles Tanqueray & Co., consolidated and were duly organized into a corporation under the laws of Great Britain and Ireland, the complainant herein, which thereafter and down to the present day has continued the manufacture and sale of the gin heretofore produced by 'Gordon & Co.' and that said gin has been known throughout the markets of the world since the year 1769 to and including the present time as 'Gordon & Co.'s Dry Gin,' which said name has been a trade-mark therefor since the year 1769."

The answer admits that Alexander Gordon began the business of gin distilling under the firm name of Gordon & Co. in London, England, and put upon the market gin under the name and trade-mark of "Gordon & Co.'s Dry Gin"; that he carried on that business until his death, and that thereafter the business was carried on in succession as stated in the bill of complaint. The complainant and its predecessors in connection with the sale of gin have for a number of years last past used sundry trade-marks or trade-names with certain accessories printed on body labels used in connection with the oblong bottles in which the gin is sold. Among them is a trade-mark representing the head of a boar, registered in the United States patent office September 13, 1892. The defendant was incorporated in 1909, and, while not manufacturing gin, puts it or a compound containing it up and sells it in packages and bottles bearing labels and displaying a trade-mark consisting of a representation of the head of an elderly man in a white circle. This trade-mark was registered by the Gordon Bitters Company, the predecessor of the defendant, in the United States patent office June 14, 1910. So far as the last mentioned two trade-marks of the complainant and the defendant are concerned I am unable to perceive that the defendant has been guilty of any infringement. It is unnecessary at this point to consider how far the complainant has an exclusive right as against the defendant, under its trade-name "Gordon & Co." to use the name "Gordon" in connection with the sale of gin; for the discussion of the charge of unfair competition in business will necessarily involve a consideration of the use by the defendant, among other things, of the name

"Gordon." While the trade-marks, namely, the boar's head and the head of an elderly man, present such marked dissimilarity as to exclude the idea of that of the defendant being mistaken for that of the complainant, that of the defendant is accompanied with such words, of such size, style of lettering and color, and such words blown in the glass of the bottles containing the gin or compound as to show a studied attempt on the part of the defendant to palm off its goods as those of the complainant. The bottles used by the defendant are similar in shape and of the same size as those of the complainant. Blown in the glass of complainant's bottles are the words "Gordon's Dry Gin" with the words "London" and "England" also blown in the glass respectively above and below the first mentioned words. Blown in the glass of the defendant's bottles are the words "Gordon's Dry Gin" and above them and also blown in the glass, but in small letters, are the letters and word "U. S. A. Father." The complainant's label as shown in complainant's exhibit No. 1, and defendant's exhibit No. 21, displays the complainant's trade-mark of a boar's head with the words in large printed red letters "Gordon & Co.'s" above the trade-mark, and in equally large and prominent red letters "Dry Gin" below the trade-mark. The defendant's label, as shown in complainant's Exhibits Nos. 2, 3, 5, and 7, displays defendant's trade-mark of an elderly man's head in a circle of white, with the word in large printed red letters "Gordon's" above the trade-mark, and the words in letters of the same character, color and size "Dry Gin" below the trade-mark. Further, the words "Gordon's Dry Gin" on the label of the defendant's bottles are of the same size and style as the words in red "Gordon & Co.'s Dry Gin" on the label of the complainant's bottles. Further, the bottles of the defendant and of the complainant are similarly beveled at the four corners, and in each case, on each of the two front corners there is a representation of juniper berries from which gin is manufactured. One of the devices that have convinced me of an unfair and fraudulent design on the part of the defendant to palm off its goods as those of the complainant is found in the fact that the defendant has printed on its labels immediately above the large red letter word "Gordon's" the word "Father" in black ink and in letters of an insignificant size. If the defendant had an intention to distinguish its label from that of the complainant in such manner as to avoid deception of the public the most obvious course would have been to print on its label the word "Father" in letters quite as conspicuous as the word "Gordon's." I cannot reconcile this circumstance with an intent to carry on business fairly. It is true that while at the bottom of the complainant's label occur the words in comparatively large and distinct type "Distillery London," there are at the bottom of the defendant's label the words in small and insignificant letters not discernible unless the bottle is comparatively close to the eye, the words "Gordon Bitters Co., Jersey City, N. J. U. S. A." or "Gordon Distillery & Distributing Co., Jersey City, N. J. U. S. A." The differences between the defendant's bottle and that of the complainant, while distinguishable upon a comparison of the two together, are calculated to deceive the public into mistaking the one for the other. The circuit court of

appeals for the third circuit in Gulden v. Chance, 182 Fed. 303, 105 C. C. A. 16, used language strikingly appropriate to the present case. It was there said with respect to bottles of olives:

"The defendants' bottles with their labels, complainant's exhibits Nos. 7, 8 and 9, particularly complained of, while differing somewhat in details from those of the complainant, exhibits Nos. 4, 5 and 6, are in their general appearance strikingly similar. They are confusing, deceptive and misleading and, as already stated, intended by the defendants so to be. When the bottles of the defendants' with their labels are viewed side by side with the bottles of the complainant with their labels, differences may be perceived which might prevent confusion on the part of purchasers who have both before them at the same time. But purchasers may not and do not as a rule have both simultaneously before them for comparison. If they have come to associate the complainant's bottles and labels with olives packed and sold by him and thereafter see the olive bottles and labels of the defendants, the complainant's bottles and labels not being at the time before their eyes, it is highly probable that purchasers in the exercise of only such degree of care as is usually observed by and reasonably to be expected from them under varying conditions of knowledge, intelligence and nationality, will be misled or deceived into the belief that in buying olives packed and dressed by the defendants, they are getting those of the complainant. The fact that salesmen or middlemen are in a position to distinguish the olives packed by the defendants from those packed by the complainant by reason of differences in bottles or labels is unimportant. The material point here is the liability of ordinary consuming purchasers to be confused and misled on the subject."

The defendant has put in the hands of retail dealers in gin an instrument of fraud intended and calculated to mislead and deceive consuming purchasers, and the evidence shows that retail dealers have in a number of instances availed themselves of the opportunity of palming off the gin or gin compound of the defendant for the gin of the complainant by so handling bottles containing the liquor of the defendant as to disclose to persons inquiring for Gordon gin the words "Gordon's Dry Gin" blown in large and prominent letters in the glass of the back of the bottles, which conspicuous words are surmounted by the small and inconspicuous letters and word "U. S. A. Father."

The complainant should receive protection against an unfair use by the defendant of words on its bottles tending to create an impression or belief on the part of ordinary purchasers that in buying gin or its compound bottled by the defendant they are buying gin manufactured by the complainant. The latter is entitled to a decree against the defendant for profits and damages, and an injunction permanently restraining the defendant from using on any labels affixed or annexed to any bottle or other package containing gin or cognate liquor other than that manufactured by the complainant either the word "Gordon" or "Gordon's" unless in letters substantially different in style and size and color from those appearing on the labels affixed to the complainant's bottles in the words "Gordon & Co.'s," and unless the word "Gordon" or "Gordon's" is immediately accompanied with words of the same style, size and color, clearly indicating that the gin or cognate liquor contained in such bottle or package is not the gin manufactured by the complainant; and also permanently enjoining the defendant from using in connection with the sale of gin or cognate liquor any bottle having blown in the glass thereof, or otherwise ap-

pearing in or on the glass thereof, either the word "Gordon" or "Gordon's" unless substantially different in size and style from the words "Gordon's Dry Gin" blown in the glass of the complainant's bottle; and also, that the defendant be permanently enjoined from selling any liquor other than the complainant's gin as and for "Gordon & Co.'s Dry Gin" or from using in connection therewith any imitation of the complainant's trade-marks and labels, or from in any manner simulating the complainant's said trade-name of "Gordon & Co." A decree in accordance with this opinion may be prepared and submitted.